IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KATHRYN JONES, § | | |
| PLAINTIFF § | | |
| § | | |
| VS. § | CIVIL ACTION NO. 4:07-CV-514-Y | |
| § | | |
| MICHAEL J. ASTRUE, § | | |
| COMMISSIONER OF SOCIAL SECURITY, § | | |
| DEFENDANT. § | | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A. STATEMENT OF THE CASE

Plaintiff Kathryn Jones brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act. Jones applied for disability benefits on November 17, 2005, alleging disability as of June 1, 2003. (Tr. 46). After the Social Security Administration denied her application initially and on reconsideration, Jones requested a hearing before an administrative law judge (the "ALJ"), and ALJ Larry C. Marcy held a hearing on April 24, 2007. On May 16, 2007, the ALJ issued a decision

that Jones was not disabled for purposes of disability insurance benefits because she was capable of performing a modified range of light work.[1] (Tr. 11-17). The Appeals Council denied Jones' request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). Third, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a listing alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C. ISSUES

    1. Whether Jones has an impairment meeting or equaling a listed impairment;

    2. Whether the residual functional capacity assessment is supported by substantial evidence; and

    3. Whether the vocational expert testimony was reliable.

D. ADMINISTRATIVE RECORD

    1. Medical and Vocational History

Jones saw David Ray, D.O., on January 17, 2006, for a consultative evaluation of her

complaints of back pain. (Tr. 129). Jones reported a fifteen-year history of back pain and three failed back surgeries. She complained of intermittent numbness and aching in her legs, tingling in her feet, and increased pain with prolonged sitting, standing, or walking. She did household chores that did not require bending or stooping, and she drove only short distances. Jones did not use any assistive device for walking. (Tr. 129).

On examination Ray noted mild tenderness and limited range of motion in Jones' lower back. She had a slight limp and bent slightly to the right when standing. She was able to walk heel-to-toe without losing her balance, but she was unable to hop. Jones refused to perform squatting or lifting exercises because of back pain. Ray ordered a cervical spine x-ray, which was interpreted as normal. Ray diagnosed degenerative lumbar disc disease status post lumbar fusion. (Tr. 130).

James Box, M.D., evaluated Jones on August 10, 2006. (Tr. 161). Jones complained of low back and bilateral leg pain since 1986. She had undergone back surgery, which had been complicated by infection and required additional surgery in 1988. Jones reported being unable to bend or stoop. Reaching bothered her, and sitting or prolonged standing aggravated her lower back. Her current medications included Advil and Aspercreme. On examination, Box noted limited range of motion in Jones' lumbar spine. She was unable to walk on her heels or toes, and straight leg raising was positive at 50 to 60 degrees bilaterally. Box diagnosed (1) a herniated nucleus pulposus[2] of the lumbar spine with secondary infection, and (2) chronic pain syndrome. (Tr. 162).

Box completed a residual functional capacity assessment in which he opined that Jones could

---

[2] Herniated nucleus pulposus refers to the herniation of an intervertebral disc. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1320 (31st ed. 2007).

stand for five to ten minutes at a time for a total of two hours per day; sit for ten minutes at a time for a total of one hour per day; and walk for six or seven minutes at a time for a total of one hour per day. (Tr. 152). He found that she could lift up to twenty pounds occasionally and could occasionally bend, twist, and reach. He found no restrictions in her ability to use her hands for simple grasping, fine work, pushing/pulling, and low-speed assembly, but opined that she should avoid high-speed assembly, heights, cold temperatures, and damp environments. (Tr. 153).

On August 17, 2006, Jones underwent a psychological evaluation with John Savell, Ph.D. (Tr. 154). She reported injuring her back at work in 1986, and over time, had begun having problems in her hips and legs. She complained of constant pain that was aggravated by activity or extended periods of standing, walking, or sitting. She had no current medications. Jones admitted to a previous substance abuse disorder, but had been sober for eleven years. She reported being a C and D student in school and had recently completed an online course for her high school diploma. (Tr. 159).

Savell observed that Jones was alert, attentive, and responsive during the interview. She was pleasant and oriented, and her thinking was coherent and logical. (Tr. 158). Jones was able to remember five digits forward and three digits in reverse. She showed no evidence of impulsivity and her comprehension of the testing materials was within normal limits. IQ testing reflected a verbal IQ of 68, a performance IQ of 70, and a full scale of 66, which placed her in the category of mild mental retardation. (Tr. 158). Her spelling and arithmetic skills were in the borderline range, and her reading comprehension was within the average range. (Tr. 156). Savell diagnosed mild mental retardation. Given Jones's intellectual scores, Savell did not believe that formal vocational

training was appropriate, but instead recommended on-the-job training. (Tr. 160).

    2.       Administrative Hearing

Jones testified that she was born May 28, 1958. She dropped out of school in the tenth grade. She had worked as a cashier and stocker, a parts inspector, a factory worker, and a nurse's aide. (Tr. 168-69). Jones attempted to work as a dishwasher in 2006, but quit after five hours because the job aggravated her back pain. (Tr. 169).

Jones testified that she has had back problems for a while, but her condition had worsened in the last year. She complained of chronic back pain, leg pain, and a tingling sensation in her feet. (Tr. 170). She testified that she could stand or walk for no more than five minutes and could not sit for lengthy periods. (Tr. 171-72). Jones had been told that additional surgery was not an option because she already had three failed surgeries on her back. (Tr. 172-73). She had applied for vocational rehabilitation, but was turned down for services. She also sought mental health treatment from Pecan Valley Mental Health and Mental Retardation (MHMR) services, but was told that her that her condition was not severe enough. (Tr. 176). Jones testified that she did not take medication because she had a history of addiction related to her previous back surgeries.

Vocational expert Carol Bennett testified that Jones had worked as a cashier, which was considered unskilled work. Although a cashier is usually classified as light work, Jones had performed her job at a medium exertional level. Jones' past relevant work also included shipping and receiving and product stripper . (Tr. 182). The ALJ asked Bennett to consider an individual limited to simple tasks and work providing a sit/stand option. Bennett opined that these restrictions were not compatible with Jones' previous work as she performed it; however, Bennett noted that

there were cashier positions available at the light level of exertion that would be suitable. Bennett estimated that there would be at least 2,000 cashier jobs in Texas and 50,000 jobs nationwide that would provide a sit/stand option. (Tr. 183). If the worker were unable to stand for more than five minutes at a time, Bennett would reduce the number of available cashier jobs by 50-60%. (Tr. 185). Bennett also testified that there were other light jobs that would accommodate the limitations outlined by the ALJ. Examples included hand packers, with 70,000 jobs nationwide, and small product assemblers, with at least 100,000 jobs nationwide. (Tr. 184).

    3.    ALJ Decision

The ALJ found that Jones had not engaged in substantial gainful activity at any time relevant to his decision. (Tr. 11). He also found that Jones was status post lumbosacral fusions and had mild mental retardation, which were severe impairments, but she had no impairment or combination of impairments meeting or equaling a listed impairment. (Tr .12). He found Jones was capable of the sustained performance of light work, limited by her need for a sit/stand option and her ability to understand, remember and carry out only simple tasks. (Tr. 15). Relying on the vocational expert's testimony, the ALJ further found that Jones could not perform her previous work, but she was capable of performing other work existing in significant numbers in the national economy. (Tr. 16-17). Accordingly, the ALJ found Jones was not disabled and was not entitled to disability insurance benefits. (Tr. 17).

E.    DISCUSSION

    1.    Listing-Level Impairment

Jones contends that her intellectual functioning is a severe impairment that meets Listing

12.05:

> 12.05 Mental retardation: Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, app. 1, § 12.05. If a claimant's impairment is in the Listing of Impairments or is found to be equivalent to a listed impairment, this raises the presumption of disability that makes further inquiry into work ability unnecessary. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The claimant has the burden of proving that an impairment meets or equals a listing. *See id.* at 530-31, 110 S.Ct. 885.

Jones argues that the ALJ considered only whether she satisfied Listing 12.05D, not whether she satisfied Listing 12.05C in light of her IQ scores and severe back impairment, but the ALJ's written decision contradicts her argument. The ALJ found that Jones' mild mental retardation constituted a severe impairment, but also found no evidence of deficits in adaptive functioning that would support the conclusion that her mental impairment met or equaled Listing 12.05. (Tr. 15). Both 12.05C and 12.05D

require the same underlying proof of deficits in adaptive functioning. Although he found that no listed impairment was satisfied, the ALJ found that Jones was limited to relatively simple work because of her intelligence scores. (Tr. 5). The ALJ's decision that Jones did not meet or equal Listing 12.05 or any other listed impairment is supported by substantial evidence.

      2.      Residual Functional Capacity Assessment

Jones contends that the ALJ failed to fully and fairly develop the record with respect to her allegations of back pain. More specifically, she contends that the ALJ should have ordered a lumbar x-ray to determine whether or not her subjective pain complaints were supported by objective medical evidence. Cervical x-rays were obtained, but no lumbar x-rays or diagnostic studies were ordered.

An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits. *Carey v. Apfel,* 230 F.3d 131, 142 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726 (5th Cir.1996); *Kane v. Heckler*, 731 F.2d 1216 (5th Cir.1984). But the court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that she was prejudiced by the ALJ's failure. *Carey*, 230 F.3d at 142. To establish prejudice, a claimant must demonstrate that she could and would have adduced evidence that might have altered the result. *Id*.

Although Jones suggests that an x-ray could have been obtained, she does not demonstrate that an x-ray would have affected the outcome or otherwise undermined the ALJ's determination that her back impairment was not as disabling as alleged. The ALJ cited the minimal objective findings identified during the consultative evaluations and Jones' failure to seek any significant level of medical treatment for her back condition. Moreover, there is no indication that any medical source recommended further diagnostic testing before an opinion could be reached about Jones' impairments. Jones has not demonstrated that the record was inadequate or that further development of the record was likely to alter

the ALJ's decision.

Jones also contends that the ALJ failed to find that chronic pain syndrome was one of her severe impairments and instead addressed her pain only as it residually impacted her degenerative back condition. The diagnosis of chronic pain syndrome was included in Box's consultative examination report; however, the ALJ did not afford significant weight to Box's findings because he was a non-treating source who gave greater significant to Jones's subjective complaints than the objective evidence would warrant. (Tr. 15). Moreover, Jones concedes that the ALJ considered her pain in assessing her residual functional capacity. The administrative record was sufficiently developed to allow the Commissioner to reach an informed decision in assessing Jones' residual functional capacity and that assessment is supported by substantial evidence

3.   Vocational Expert Testimony

Jones contends that the ALJ presented the vocational expert with a defective hypothetical, and therefore, any testimony that the vocational expert provided in response to that hypothetical is unreliable. The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A claimant's failure to point out problems in a defective hypothetical does not salvage that hypothetical as a proper basis for a disability determination. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). However, there is no requirement that the ALJ incorporate limitations he has not found to exist.

Jones asserts that the ALJ failed to incorporate two non-exertional impairments, namely, her

poor arithmetic skills and her inability to perform high-speed assembly. The ALJ accounted for Jones' intelligence scores by limiting her to relatively simple work, and Jones has not established that this was an inadequate accommodation of her severe mental impairment. Although Box opined that Jones was unable to perform high-speed assembly work, the ALJ declined to assign significant weight to Box's assessment because it was inconsistent with the objective evidence. The ALJ presented a hypothetical that reasonably incorporated all of the limitations he found to exist.

Jones also asserts that there is an unresolved conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). *See generally* SOCIAL SECURITY RULING 00-4p (requiring the ALJ to identify and resolve conflicts in the vocational evidence). More specifically, Jones complains that the vocational expert testified that a hypothetical worker as described by the ALJ could perform the job of "hand packer," but after searching the record, Jones has not been able to find any listing in the DOT for the job of "hand packer." Jones fails to demonstrate the existence of any conflict in the vocational evidence. No conflict was explored during the hearing, and Jones' belated assertion that she is now unable to locate a job for "hand packer" in the DOT does not defeat the vocational expert's testimony that "hand packers" represents a category of jobs that would fit within the work-related limitations identified by the ALJ. *Cf. Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000)(cautioning against allowing a claimant to scan the record for unexplained conflicts between expert witness testimony and the voluminous provisions of the DOT and then present the conflict as reversible error when the conflict was not considered sufficient to merit adversarial testing during the hearing). Moreover, Jones' argument does not undermine the vocational expert's testimony that an individual with her residual functional

capacity also would be able to perform the duties of a cashier or small products assembler.

Substantial evidence supports the ALJ's determination at Step Five that Jones was not disabled because she retained the capacity to perform work existing in significant numbers in the national economy.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until December 3, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until December 3, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED NOVEMBER 12, 2008.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE